COURT OF APPEALS
DECISION
DATED AND FILED

March 11, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1650-CR**

Cir. Ct. No. **2017CT1665**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

KELLY C. RICHARDSON,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Waukesha County: MARIA S. LAZAR, Judge. *Affirmed*.

¶1     GUNDRUM, J.[1]    Kelly C. Richardson appeals from a judgment of conviction for operating a motor vehicle while intoxicated, third offense.[2] Richardson asserts the circuit court erred in denying her motion to suppress evidence, which it denied based upon its determination that the arresting law enforcement officer had reasonable suspicion to temporarily detain her for investigative purposes.  Because we conclude the court did not err, we affirm.

### Background

¶2     A hearing was held on Richardson's suppression motion, at which the following relevant evidence was presented.

¶3     Sergeant Jeffry Monreal of the Muskego Police Department testified that at approximately 11:30 a.m. on December 15, 2017, he was dispatched to PNC Bank because bank employees called the police to report that a customer "was possibly intoxicated," having observed the customer to smell of intoxicants and have slurred speech.  The employees were still at the bank and available to provide statements to law enforcement; the customer, however, had left in a black Jeep Wrangler.  Monreal was provided with the license plate number for the Jeep and was informed that the allegedly intoxicated driver, the customer, wore blue jeans and a grey coat and had short blond hair.  Approximately ten to fifteen minutes later, Monreal located the Jeep on a city road, followed it, and even though it was "pretty far away," observed it turn into a Walmart parking lot.  Monreal located the Jeep in

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2]  Richardson also appeals the denial of her postconviction motion, which sought resentencing.  Because she has developed no argument on appeal related to this issue, we deem her to have abandoned it.  *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998).

the parking lot and waited to see if he could make contact with anyone coming back to it.

¶4      After approximately five to ten minutes, Monreal observed a person walking out to the Jeep who matched the description provided by the bank employees. When this person, Richardson, was approximately ten feet from the Jeep, Monreal informed her he was a law enforcement officer and asked her if the Jeep was hers. Richardson responded that it was. He asked if she had driven to Walmart, and she indicated she had. Monreal further asked Richardson if there had been anyone else in the vehicle with her, and she responded in the negative. Monreal observed that Richardson had "a strong odor of intoxicants emanating from her breath," slurred speech, and eyes that were bloodshot and glassy. Monreal confirmed that following these observations, additional investigation ensued that eventually led to Richardson being arrested and charged with OWI, third offense. Richardson entered a no-contest plea to that charge, and following her sentencing, brought this appeal.

## Discussion

¶5      We apply a two-step analysis in reviewing a circuit court's determination that an officer had reasonable suspicion to initiate an investigative stop. *State v. Post,* 2007 WI 60, ¶8, 301 Wis. 2d 1, 733 N.W.2d 634. We will uphold the circuit court's factual findings unless they are clearly erroneous; however, we review de novo the application of those facts to constitutional standards. *Id.*

¶6      In this case, however, we need not even consider whether Monreal had reasonable suspicion, because the record from the suppression hearing does not indicate that Richardson was seized by Monreal until he eventually arrested her for

OWI, and Richardson raises no challenge to the lawfulness of the arrest itself. As our state supreme court has stated, the Fourth Amendment—the legal authority under which Richardson brings her appeal—is "not implicated until a government agent 'seizes' a person." *County of Grant v. Vogt*, 2014 WI 76, ¶19, 356 Wis. 2d 343, 850 N.W.2d 253. And "not all personal interactions between law enforcement officers and people constitute a seizure." *Id.*

> A seizure occurs "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." As Justice Stewart stated in [*United States v.*] *Mendenhall*, [446 U.S. 544 (1980),] "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."

*Id.*, ¶20 (citations omitted).

¶7 The test for whether a seizure has occurred is an objective one, looking at the totality of the circumstances and considering "whether an innocent reasonable person, rather than the specific defendant, would feel free to leave under the circumstances." *Id.*, ¶¶30, 38. There is no seizure "[u]nless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he [or she] was not free to leave." *Immigration & Naturalization Serv. v. Delgado*, 466 U.S. 210, 216 (1984).

¶8 Here, there is no indication in the record that the circumstances of Monreal's encounter with Richardson as she approached her Jeep were "so intimidating as to demonstrate that a reasonable person would have believed he [or she] was not free to leave." *See id.* While Monreal and another officer on the scene were in their police uniforms, this is no different than any other consensual encounter with law enforcement in the community. As the United States Supreme

Court has stated, "[P]olice questioning, by itself, is unlikely to result in a Fourth Amendment violation. While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *Id.* Here, the encounter occurred in a very public location—a Walmart parking lot—in the middle of the day; neither officer had parked his vehicle in a manner that would have prevented Richardson from leaving in her Jeep; there is no indication either officer made any physical contact with Richardson or restrained her in any way; and there is no indication either officer suggested she was not free to leave. Because Richardson was not seized prior to providing her responses to Monreal, Monreal did not violate the Fourth Amendment in securing those responses as the Fourth Amendment was not even implicated. Thus the circuit court did not err in declining to suppress the evidence Monreal gathered during his encounter with Richardson or in ultimately denying her motion to suppress.

¶9      All that said, even if Monreal needed reasonable suspicion before speaking with Richardson in the parking lot, he nonetheless had it. Monreal was responding to a reliable report from citizen informants that they had observed Richardson as being "possibly intoxicated," based upon their specific observations that she smelled of intoxicants and had slurred speech, and driving away in her vehicle. The information was reliable because it came from "employees" of a bank within the community—so from multiple known persons, as opposed to a single anonymous source, who work at a known local place of business. Additionally, the employees were willing to provide a statement and thus could be held accountable if they provided a false statement, and they provided a description of the person and the vehicle, including the license plate number, which vehicle and person matching the description were soon thereafter located in the area. Furthermore, the employees

did not limit their report to stating that Richardson was "possibly intoxicated" but gave the specific, detailed observation that she smelled of intoxicants and her speech was slurred. This constituted reasonable suspicion that the reported driver of the Jeep, who matched the description of the person Monreal observed walking toward the Jeep in the parking lot, had been operating the vehicle while intoxicated. Monreal's own additional observations of Richardson once he engaged her in conversation in the parking lot—"a strong odor of intoxicants emanating from her breath," slurred speech, bloodshot and glassy eyes—and her admission that she had driven the Jeep to the parking lot only added to the reasonable suspicion Monreal already possessed.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.